UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LORI A COX, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:14-cv-01393-SEB-TAB |
| | ) |
| CAROLYN W. COLVIN Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

**I.    Introduction**

Plaintiff Lori A. Cox appeals the Commissioner's denial of disability and disability insurance benefits.  Cox argues that: (1) the ALJ erred at step three by failing to address relevant listings when holding that Cox did not meet or medically equal a listed impairment; (2) the ALJ erred in his credibility analysis; and (3) the ALJ erred by not discussing how Cox's migraines would affect her ability to work.  For the reasons set forth below, the Magistrate Judge recommends that Cox's brief in support of appeal [Filing No. 15] be granted.

**II.    Discussion**

*A.    Standard of review*

The Court must uphold the ALJ's decision if substantial evidence supports his findings. *Blakes v. Barnhart*, 331 F.3d 565, 568 (7th Cir. 2003).  Substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (quoting *Richardson v. Perales*, 402 U.S.

1

389, 401 (1971)). The ALJ need not address every piece of evidence or testimony presented, but must provide a "logical bridge" between the evidence and his conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). If evidence contradicts the ALJ's conclusions, he must confront that evidence and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

  B. *Step three listings*

Cox argues that the ALJ erred at step three by not discussing whether Cox's impairments fell under a specific listing. The ALJ found at step three that:

> [a]lthough the claimant has "severe" impairments, they do not meet the criteria of any listed impairments described in Appendix 1 of the Regulations (20 CFR, Subpart P, Appendix 1). No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listing of Impairments.

[Filing No. 12-2, at ECF p. 22.] Cox argues that the ALJ failed to evaluate her back impairments under listing 1.04(A). To be sure, the ALJ's listing analysis was perfunctory. The ALJ failed to specifically mention any relevant listing. This was in error, as *Ribaudo v. Barnhart*, 458, 583 F.3d 580 (7th Cir. 2006) makes clear that an ALJ should mention the specific listings considered and evaluate evidence favorable to the claimant in satisfying a listing.

To satisfy listing 1.04(A), a claimant must have a disorder of the spine, such as spinal stenosis, which results in compromise of a nerve root. Under subsection A, the impairment must also show "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.04.

2

Here, the medical record contains evidence of nerve root compression, numbness, and positive straight-leg raise tests.  For example, a March 2012 MRI revealed moderate central canal stenosis and mild neural foramina stenosis.  [Filing No. 12-7, at ECF p. 39.]  At a December 2010 examination, Cox showed evidence of mild degenerative changes to the visualized spine.  [Filing No. 12-7, at ECF p. 18.]  Her March 2012 MRI also showed "chronic endplate degenerative changes" at the L4-L5 and L5-S1 levels.  [Filing No. 12-7, at ECF p. 39.]

Moreover, the ALJ discussed evidence of Cox's symptoms that are relevant to listing 1.04.  At a February 2012 evaluation with Dr. Wallace Gasiewicz, Cox described numbness and pain distributing down her lower back into her legs.  [Filing No. 12-2, at ECF p. 23.]  Dr. Gasiewicz further reported evidence of a bending limitation of sixty degrees flexion in her spine, a positive straight-leg raise test on her left leg in both the sitting and supine positions, lack of reflex in her left ankle, and lumbar neuropathy.  [Filing No. 12-8, at ECF p. 11-13.]  The ALJ also considered Cox's reports of using a non-prescribed cane to help her walk on occasion and "found greater postural limitations [were] justified" than the limitations that the state agency medical consultant advised.  [Filing No. 12-2, at ECF p. 23.]

Nevertheless, Cox does not meet all the requirements under listing 1.04(A).  The medical evidence showed conflicting reports of motor loss, muscle atrophy, or muscle weakness.  In an October 2010 medical examination, Cox was able to walk on her heels and toes with only mild weakness in her left lower extremity.  [Filing No. 12-7, at ECF p. 9.]  But the ALJ acknowledged both the February 2012 physical RFC assessment with Dr. Joshua Eskonen and evaluation with Dr. Gasiewicz in which Cox was unable to walk on heels and toes.  [Filing No. 12-2, at ECF p. 23.]  Dr. Eskonen noted Cox had "equal reflexes," despite Dr. Gasiewicz's report that she had no observable left ankle reflex during the same month.  [Filing No. 12-8, at ECF p. 13-16.]  The

3

ALJ mentioned Cox's complaints of leg weakness to her primary physician in February 2012. However, Dr. Meher Battiwalla reported the exam as "unremarkable." [Filing No. 12-2, at ECF p. 24; Filing No. 12-7, at ECF p. 102.] The ALJ also noted evidence that Cox did not suffer significant motor loss. In both February 2012 visits with Drs. Eskonen and Gasiewicz, Cox's muscle strength and tone were rated as normal with no atrophy. She walked without a limp and was able to get on and off the examination table without assistance at Dr. Eskonen's evaluation. [Filing No. 12-2, at ECF p. 24.] In a June 2012 psychological evaluation, her "[g]ait appeared normal as she walked from the parking lot into the building." [Filing No. 12-8, at ECF p. 44.] The ALJ also pointed to Cox's ability to maintain posture during a sixty-minute medical examination. [Filing No. 12-2, at ECF p. 24.] Moreover, at a January 2013 medical visit, Cox reported that she was motivated to get an elliptical machine to start exercising to improve her pain, lose weight, and stay motivated. [Filing No. 12-8, at ECF p. 86.] Because the evidence does not show legitimate motor loss and muscle atrophy, the ALJ's failure to discuss listing 1.04(A) was harmless. *See Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (finding that despite the ALJ's failure to explicitly consider and apply a specific listing, the ALJ's decision was affirmed as the claimant's evidence did not meet all of the criteria for the most applicable listing).

Cox further asserts that the ALJ should have evaluated Cox's migraines under listing 11.03 for nonconvulsive epilepsy. This listing requires:

> [Documentation] by detailed description of a typical seizure pattern including all associated phenomena, occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment; With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

4

20 C.F.R. Part 404, Subpt. P, App. 1, §11.03.  While Cox alleges her migraines caused debilitating interruptions with her days, substantial evidence does not show a typical seizure pattern and alteration of awareness or loss of consciousness, as required under the listing.  [Filing No. 12-8, at ECF p. 11.]  June 2010 and February 2012 medical examinations show that doctors reported Cox did not have seizures.  [Filing No. 12-7, at ECF p. 10; Filing No. 12-8, at ECF p. 11.]  In June 2012, Cox "denied a history of seizures."  [Filing No. 12-8, at ECF p. 47.]  At a February 2012 evaluation, Cox reported to Dr. Gasiewicz that her migraines occur every day and that she was taking Maxalt to alleviate them, which "[did] help some."  [Filing No. 12-8, at ECF p. 11.]  At another February 2012 medical evaluation, Cox reported to Dr. Eskonen that she had debilitating migraines four times a week.  [Filing No. 12-8, at ECF p. 16.]  Both Drs. Gasiewicz and Eskonen described Cox's migraines as "atypical."  [Filing No. 12-8, at ECF p. 14-16.]  Because Cox's migraines do not show a typical seizure pattern, they are inapplicable to listing 11.03 for nonconvulsive epilepsy.  Therefore, the ALJ's failure to cite a particular listing in connection to migraines was harmless.

  Cox argues that "[t]here is enough evidence to at least warrant a discussion" of whether her conditions met listings 1.04 and 11.03.  However, substantial evidence does not support Cox meeting or medically equaling the two listings.  The ALJ considered relevant medical evidence for listings 1.04 and 11.03, and the Magistrate Judge is convinced that the ALJ would arrive at the same result on remand.  See *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).  Thus, the ALJ's failure at step three amounts to harmless error and remand should not be granted on this issue.

5

C. *Credibility Determination*

Cox also argues that the ALJ committed several errors in his credibility determination, which warrants remand. An ALJ's credibility determination is afforded considerable deference and only overturned if patently wrong. *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (citing *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)). Under *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006), a credibility finding will be found patently wrong and reversed only if it is based on an argument that is unreasonable or unsupported.

Cox asserts that the ALJ erroneously failed to discuss and apply each of the six SSR 96-7p credibility factors in his analysis.[1] [Filing No. 15, at ECF p. 24.] Cox is correct that the ALJ did not explicitly address all of the factors. After discussing Cox's objective medical evidence, poor work history, alleged noncompliance with treatment, and her husband's inconsistent statements, the ALJ simply wrote: "In addition, consideration of the factors described in Social Security Ruling 96-7p—including the claimant's work history—also leads to a conclusion the claimant's allegations of disabling symptoms and limitations cannot be fully accepted." [Filing No. 12-2, at ECF p. 25.] However, the ALJ is not required to discuss each factor. *Clay v. Apfel*, 64 F.Supp. 2d 774, 781 (N.D. Ill. 1999) (articulating that "SSR 96-7p does not require an ALJ to analyze and elaborate on each of the seven factors set forth when making a credibility determination.").

---

[1] The factors include: daily living activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment other than medication the individual receives or has received for relief of pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 1996 WL 374186 (1996).

Moreover, the ALJ discussed relevant factors in assessing Cox's credibility.  For example, the ALJ addressed Cox's prior work history, finding Cox had poor motivation to work because she did not work from 1986 to 2001 and during 2006 and 2007.  In fact, Cox had only worked in total for three years since 2002.  [Filing No. 12-2, at ECF p. 24.]  The ALJ also considered Cox's husband's statements.  The ALJ found Mr. Cox's statements inconsistent because Mr. Cox wrote that his wife could only pay attention for thirty minutes, yet she was able to remain attentive during her hour-long psychological examination.  [Filing No. 12-2, at ECF p. 25.]  The ALJ further considered Cox's daily living activities, noting that Cox reported difficulties performing household chores, standing while showering, walking for fifteen minutes, sitting for twenty minutes, and concentrating during her migraine episodes.  [Filing No. 12-2, at ECF p. 22-23.]  Thus, the ALJ's failure to mention each SSR 96-7p factor does not amount to reversible error.

Next, Cox argues that the ALJ mischaracterized and apparently ignored evidence of Cox's recommended therapy attendance.  In discussing Cox's credibility, the ALJ devoted a paragraph to Cox's recommended physical and psychological treatments.  The ALJ concluded that "[Cox's] failure to follow up on treatment recommendations by her doctors suggests that her symptoms may not have been as serious as she alleged."  [Filing No, 12-2, at ECF p. 24.]  In making this conclusion, the ALJ noted that Cox's primary physician referred her to physical therapy, but there was no indication she attended. Indeed, a February 2012 physician report indicated that Cox was referred to a physical therapy consultant to be evaluated and treated for lower back pain.  [Filing No. 12-7, at ECF p. 102-103.]  However, a review of the record shows that from March 2012 to April 2012, Cox attended and completed six weeks of a physical therapy program.  [Filing No. 12-7, at ECF p. 53-59.]  Moreover, Cox testified at the hearing that

she had attended physical therapy, but that it had not helped her back pain. [Filing No. 12-2, at ECF p. 51.] Thus, the ALJ mischaracterized Cox's compliance with her treatment plan.

The ALJ also mischaracterized and ignored evidence of Cox's participation in psychological treatment. Cox's primary physician referred her to see a counselor for managing her symptoms of depression in the February 2012 physician report. [Filing No. 12-7, at ECF p. 102.] The ALJ stated that "[a]lthough the claimant reported to a consultative psychological examiner she was seeing a therapist once a month, the claimant failed to submit any medical records to substantiate that claim." [Filing No. 12-2, at ECF p. 24.] However, the record shows that Cox saw her Cottage Corners therapist in March 2012 and April 2012 to discuss her depression and relationships with her husband, father, and children. Each visit lasted forty to fifty minutes. [Filing No. 12-8, at ECF p. 41.] Cox was scheduled to return for a May 2012 follow-up visit, but no evidence in the record confirms whether this visit occurred. [Filing No. 12-8, at ECF p. 41-42.] The ALJ also found that Cox failed to seek a psychiatric evaluation to explore medication options as recommended by her therapist. To support this conclusion, the ALJ relied on a June 2012 consultative examination where Cox noted she had not been seeing a psychiatrist for her depression. [Filing No. 12-2, at ECF p. 24; Filing No. 12-8, at ECF p. 49.] However, the ALJ failed to mention an October 2012 doctor visit that reported Cox was "seeing psych" for her depression and had "[j]ust added celexa which is helping but makes her sleepy." [Filing No. 12-8, at ECF p. 71.]

It is apparent that the ALJ ignored several pieces of significant evidence in finding Cox to be not credible. The ALJ's conclusions regarding Cox's attendance at her psychological and physical therapy sessions are not reasonable nor are they supported by substantial evidence in the

record.  Remand on this issue is justified, especially in light of the fact that the ALJ's discussion of Cox's migraines (as set forth below) also amounts to reversible error.

      D.      *Cox's migraines*

Cox asserts that the ALJ erred in considering her migraines when determining her RFC. While the ALJ found Cox's headaches to be a severe impairment at step two, the ALJ included no express limitations in the RFC finding that relate to Cox's migraines.  Specifically, Cox asserts remand is necessary because the ALJ did not consider the severity and frequency of Cox's migraines in determining her RFC limitations.  [Filing No. 12-2, at ECF p. 19, 22-24.] The ALJ's RFC found Cox capable of performing light work "except no more than occasional climbing, balancing, kneeling, crouching, crawling, or stooping.  The claimant must have avoided concentrated exposure to vibration and avoid unprotected heights and dangerous terrain."  [Filing No. 12-2, at ECF p. 22.]  The ALJ noted that he included vibrations to account for pain from Cox's back, legs, and head.  However, the ALJ's discussion of Cox's migraines in relation to his RFC finding ends there.  [Filing No. 12-2, at ECF p. 25.]

This is puzzling for two reasons.  First, the ALJ listed Cox's headaches as a severe impairment, but failed to provide any meaningful limitation given the frequency and severity of her symptoms.  Second, the ALJ mentioned and discussed Cox's subjective statements concerning her migraines but failed to adequately discredit her consistent complaints of these debilitating headaches.  The ALJ referenced Cox's report that her migraines made her unable to concentrate and irritable.  [Filing No. 12-2, at ECF p. 23.]  The ALJ noted that in a February 2012 evaluation, Cox reported she has had migraines since 1996 that occur daily, last for hours, and make her feel "like [her] head will explode."  She also reported symptoms of vomiting, feeling light-headed, and blurred vision.  [Filing No. 12-8, at ECF p. 11; Filing No. 12-2, at ECF

9

p. 24.]  At the hearing, Cox testified that she was taking two medications to manage her migraines, but the medications did not help very much.  [Filing No. 12-2, at ECF p. 50.]  Cox also stated that she was seeing a neurologist and pain clinic doctor for migraine help.  [Filing No. 12-2, at ECF p. 60-61.]  While there is no objective medical evidence in the record concerning migraines, Cox's own testimony indicated that her migraines were increasing in frequency and severity, which the ALJ acknowledged.  [Filing No. 12-6, at ECF p. 69; Filing No. 12-2, at ECF p. 22.]

Despite listing Cox's headaches as a severe impairment and acknowledging her continued complaint of migraines, the ALJ improperly discredited Cox's reports of severe migraine pain with a reference to a single examination.  The ALJ noted that even though Cox reported excruciating daily headaches, Cox was "alert, oriented, quite cooperative, conversant, and did not appear to be in any distress" during her examination with Dr. Gasiewicz.  [Filing No. 12-2, at ECF p. 24.]  However, this examination alone was not a valid reason to discredit Cox's complaints of pain.  Migraine symptoms are not present throughout the entire day, and their legitimacy cannot be judged based upon a claimant's behavior at a single examination.  *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (noting "[t]he fact that [claimant] did not have a headache at the time of [a doctor visit] is no reason to conclude anything about the frequency or severity of [claimant's] migraines.").  Moreover, the medical evidence shows that Cox consistently complained about migraines to her doctors and her symptoms appeared to worsen even after taking medications.  [*See e.g.* Filing No. 12-7, at ECF p. 2, 18, 44; Filing No. 12-8, at ECF p. 2, 11; Filing No. 12-6, at ECF p. 69.]

The Commissioner argues that there is no objective medical evidence to support Cox's frequency and severity of her migraines.  However, the fact that there is no objective medical

evidence does little to support the ALJ's finding, as courts have recognized diagnostic testing cannot necessarily reveal the frequency or severity of migraines.  *See, e.g., Wise v. Colvin*, No. 1:14-cv-00988-SEB-MJD, 2015 WL 1969364, at *4 (S.D. Ind. Apr. 30, 2015) (referencing "other conditions for which there are no objective diagnostic tests, such as . . . migraine headaches and mental illnesses."); *Bridges v. Astrue*, No. 3:11-CV-396-CAN, 2012 WL 3204889, at *11 (N.D. Ind. Aug. 1, 2012) (noting that "migraines cannot be diagnosed effectively using diagnostic imaging tests. . ."); *Washington v. Colvin*, No. 12 C 4995, 2013 WL 1903247, at *11 (N.D. Ill. May 7, 2013) (stating "[a]s courts have recognized, diagnostic testing cannot necessarily reveal the frequency or severity of migraines.").  Instead, the ALJ must consider Cox's subjective statements, which the ALJ erroneously discredited with Dr. Gasiewicz's examination.

      The ALJ failed to consider what effect, if any, Cox's weekly headaches would have on her ability to work, even though the record shows Cox consistently complained of debilitating migraines on a weekly basis.  This is especially important as the vocational expert found at the hearing that Cox would be precluded from work in the national economy if she were to miss one to two days of work per month due to her migraines.  [Filing No. 12-2, at ECF p. 65-66.]  Thus, the ALJ failed to build a logical bridge from the evidence of Cox's frequent and severe migraines to the conclusion that Cox can perform light work but must avoid vibrations because of her migraines.  Remand is appropriate for the ALJ to discuss what effect, if any, the frequency and severity of Cox's migraines have on her ability to perform work.

**VI.     Conclusion**

      For the foregoing reasons, Plaintiff's brief in support of appeal [Filing No. 15] should be affirmed and the Commissioner's decision should be remanded pursuant to sentence four of 42

U.S.C. §405(g) so that the ALJ may reassess Cox's credibility and consider the frequency and severity of Cox's migraines on her RFC.  Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1).  Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date:  8/4/2015

_____
Tim A. Baker
U.S. Magistrate Judge
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov